## Jeremiah Dawson v. James W. Humphrey.

1. VERDICTS—*Conclusive on Questions of Fact.*—Where the evidence is conflicting the verdict of the jury is conclusive on all questions of fact, if not manifestly against the weight of the evidence, or the result of passion or prejudice.

Assumpsit, for work, labor, etc. Trial in the Circuit Court of Iroquois County; the Hon. ROBERT W. HILSHER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed July 20, 1899.

C. W. RAYMOND, attorney for appellant.

C. G. HIRSCHL and J. W. KERN, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Early in 1894 Humphrey made a verbal contract with Dawson to deepen an old ditch through certain lands of Dawson in Indiana, and to continue it far enough below to give Dawson an outlet. He was to deepen it three feet through Dawson's land, and make it six feet wide at the bottom of the existing ditch, and make it V-shaped in the bottom. Dawson was to pay Humphrey $300 for the work when done, and Humphrey was to have three years in which to do it if necessary. Humphrey did the work, was paid $10, and sued for the balance, and on jury trial obtained verdict and judgment for $290. Defendant appeals.

The proof introduced by the plaintiff was to the effect that he finished the work according to the contract in the fall of 1895, and so notified Dawson, and asked him to come and measure the ditch with him to see that it was properly done according to contract, but Dawson would not come. Before beginning the work Humphrey had driven stakes at various points in Dawson's land, both in the bottom and at the side of the ditch, so that the tops of the stakes were just even with the top of the ground as it was before he began work, and it was by measuring the new ditch from the tops of the stakes that it was proposed to ascertain to what additional depth it had been sunk. After defendant refused to measure it plaintiff took others with him and measured the ditch, and their evidence tends to show the ditch was completed with the depth, width and outlet agreed, though one of them did not fully sustain the claim on cross-examination. Defendant did not pay, and in 1896 and 1897 plaintiff did some further work in the ditch, which is relied

upon as a confession the work had not been completed as agreed.   It was no doubt a proper question for the jury to determine whether this was the true explanation of plaintiff's doing the additional work, but a different explanation appeared in the testimony which the jury might well believe, namely, that plaintiff wanted to satisfy defendant and be paid without a lawsuit, and did unnecessary work with the hope of gaining that result.   In 1897 and 1898 witnesses for defendant measured the ditch, and their testimony tended to show it was not then of the depth the contract called for. But in one of plaintiff's fields through which the ditch ran seventy hogs were kept, and they rooted and wallowed as they pleased in the ditch.   In another field were cattle, and they often crossed the ditch.   Much of the land through which it passed was sandy, and easily caved in.   There were heavy rains after plaintiff finished it and before defendant's witnesses measured it, which were liable to wash soil and *debris* into it.   The evidence tended to show such a ditch, through such soil, needed to be cleaned out every year or frequently, on account of the tendency to cave in.   We certainly can not say the jury were clearly wrong, or that another jury would be apt to reach a different conclusion. The terms of the contract were not disputed, and the force of defendant's proof was much weakened by the fact that his witnesses testified almost entirely to the condition of things two and three  years after Humphrey notified Dawson the work was done and requested him to then examine and measure it.

 Defendant complains that certain instructions offered by him were modified by the court before they were given, by striking out certain parts thereof.   We find the matters so stricken out were fully contained in other instructions given for defendant.   Plaintiff's instruction No. 6 referred to this as a contract for deepening the ditch, and did not refer to it as also a contract for widening it.   No doubt the instruction was so given because the controversy was almost wholly over the depth of the ditch.   In at least three instructions offered and given defendant adopted the same theory, and

made the result turn upon the question whether the ditch was dug three feet deeper, and he did not request any instruction as to the width of the ditch. Under such circumstances defendant can not complain. Nor do we think the failure to refer to the width of the ditch harmed defendant, in view of the evidence upon that subject. Instructions were given at the request of plaintiff as to the effect of an acceptance of the work by defendant. It is argued there was no evidence tending to show acceptance, and therefore these instructions were erroneous. Defendant tiled into this drain after it was completed. After Humphrey had finished, defendant told Karr he had a very good outlet, and had his land pretty fairly tiled. In February, 1896, he promised to pay Humphrey some money soon, though his contract did not require any payment till the work was done. He excused his delay by the fact that he had had to pay a security debt, and that money was scarce. . He paid $10 on the contract in March, 1896. This was evidence to go to the jury on the subject of acceptance. Its weight was for the jury, but it was sufficient to authorize the giving of instructions on the subject.

We find no substantial error in the record, and the judgment is affirmed.